# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| A.V. AVINGTON, JR., | ) |
| Plaintiff, | ) |
| | ) Case No. 17-CV-235-JED |
| v. | ) |
| | ) |
| INDIAN HEALTH CARE RESOURCE | ) |
| CENTER OF TULSA, | ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

**I.     Background**

Before the Court are plaintiff's Complaint (Doc. 1) and Motion for Leave to Proceed In Forma Pauperis and Supporting Affidavit (Doc. 2). Plaintiff alleges that he is a 61 year-old "Cherokee Freedman" of African American descent and that his claims are brought pursuant to Title VII of the 1964 Civil Rights Act and 42 U.S.C. § 1981, as amended.[1] He alleges that, on or about October 21, 2015, the defendant's employees exhibited extreme and outrageous conduct towards the plaintiff while he was a patron of defendant's clinic. That day, his blood pressure was high, and he alleges that he needed immediate attention. Plaintiff went to the Indian Health Care Resource Center as a "walk in" patient, because he "did not have an appointment." (Doc. 1 at 2-4). The receptionist told the plaintiff that he "would have to take a seat and wait for someone to cancel their appointment in order to be seen by a doctor," and plaintiff agreed. (*Id.* at 4, ¶ 9). Plaintiff alleges that, while he sat waiting for an hour, he observed other patients being called to

---

[1] Other than one passing reference to § 1981 at the beginning of his Complaint, plaintiff does not reference § 1981 anywhere in the balance of the Complaint, and he does not indicate that it is the basis of any of his three Causes of Action.

see the doctor. Plaintiff alleges that those other patients were white and were walk-in patients. (*Id.* at ¶ 11). After he inquired, plaintiff asserts that the triage receptionist informed plaintiff that the "other patients [sic] needs were more important than [his]." (*Id.* at ¶ 14).

After two hours, plaintiff asked to talk to a manager and requested a "complaint form to fill out feeling humiliated as if Plaintiff an African American had no legal right to be associated with the Indian Health Care Resource Center of Tulsa." (*Id.* at 5). At that point, plaintiff asserts that the center "became a hostile environment towards [him]," and he thereafter returned to the waiting room. (*Id.*). Subsequently, the defendant's Chief Operating Officer allegedly provided plaintiff a copy of his complaint and told plaintiff that he could wait for a doctor then or could come back after lunch to see if a doctor would be available. (*Id.*). Plaintiff waited a total of five and one-half hours to see a doctor. (*Id.* at 6). He subsequently wrote a letter alleging discrimination. (*Id.*).

Plaintiff alleges that the foregoing is actionable discrimination. In his First Cause of Action, he cites employment law (*id.* at 7) and asserts that the defendant's employees acted in an "outrageous and weird manner in causing public embarrassment and humiliation to the Plaintiff," and he "has been ostracized and victimized" as a result. (*Id.*). For his second cause of action, plaintiff asserts a claim for intentional infliction of emotional distress, and asserts that the defendant's failure to "rectify the discriminating treatment of the Plaintiff by supervisors' actions that constitutes a significant change in the Equal Employment Opportunity in the context of Title VII." (*Id.*). Plaintiff's Third Cause of Action is for Age Discrimination, but his factual allegations appear to have nothing to do with age discrimination. (*Id.* at 10-11). Instead, plaintiff's Third Cause of Action appears to relate to the defendant's suspension of plaintiff as a patient for making appointments and not showing up or showing up late. The defendant also asserted in writing that

plaintiff exhibited disruptive and inappropriate behaviors in the clinic such that the plaintiff would have to find a new health care provider. (*Id.* at 11-12).

## II. Standards

Plaintiff seeks to commence the action without prepayment of fees pursuant to 28 U.S.C. § 1915(a)(1), which provides that "any court of the United States may authorize the commencement, prosecution or defense of any suit . . . without prepayment of fees . . . by a person who submits an affidavit that includes a statement of all assets such [person] possesses that the person is unable to pay such fees." Despite the statute's reference to "prisoner," it applies to all persons who apply for in forma pauperis status. *Brown v. Eppler*, 725 F.3d 1221, 1229 n.6 (10th Cir. 2013) (citing *Lister v. Dep't of Treasury*, 408 F.3d 1309, 1312 (10th Cir. 2005)). In enacting § 1915(a), Congress intended to provide indigent litigants meaningful access to the federal courts. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). "Congress recognized, however, that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Id.* To prevent frivolous filings, the statute authorizes a court to sua sponte dismiss a case filed in forma pauperis where the action is frivolous or malicious, the plaintiff has failed to state a claim upon which relief can be granted, the defendant is entitled to immunity, or the plaintiff has included false allegations of poverty. *See* 28 U.S.C. § 1915(e)(2); *Stafford v. United States*, 208 F.3d 1177, 1179 n.4 (10th Cir. 2000).

While pro se pleadings must be liberally construed and must be held to less stringent standards than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a district court should not assume the role of advocate. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009); *Garret v. Selby Connor*

*Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Moreover, even pro se plaintiffs are required to comply with the "fundamental requirements of the Federal Rules of Civil and Appellate Procedure" and substantive law, and the liberal construction to be afforded does not transform "vague and conclusory arguments" into valid claims for relief. *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-1174 (10th Cir. 1997).

The standard for failure to state a claim under § 1915 is the same as under Fed. R. Civ. P. 12(b)(6). To survive dismissal for failure to state a claim, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The standard requires "enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555-56, 570 (citations omitted).

## III. Discussion

Initially, the Court notes that, while plaintiff relies heavily upon Title VII and employment-related allegations in each of his Causes of Action, the Complaint contains no facts that would state a plausible claim of employment discrimination. Plaintiff was not employed by the defendant. The employment-related allegations in his Complaint may have been copied from other complaints that he has filed in this courthouse, in which he has previously alleged age and race discrimination and retaliation. (*See, e.g., A.V. Avington, Jr. v. Metropolitan Tulsa Urban League*, Case No. 12-CV-621-JED; *A.V. Avington, Jr. v. Maxim Staffing Solutions Agency, Inc.*, Case No. 14-CV-233-JED). Simply put, he has no claim for employment discrimination against a defendant who was not his employer, and such claims are dismissed with prejudice.

As noted, plaintiff makes only one passing reference to § 1981, and his specific Causes of Action do not reference that statute or state any claim under it. (*See* Doc. 1 at 2, ¶ 3). Assuming he has attempted to state such a claim, his Complaint fails to do so. "Section 1981 prohibits racial discrimination in the making, performance, modification, and termination of contracts, and the enjoyment of all the benefits, privileges, terms, and conditions of the contractual relationship." *Reynolds v. School Dist. No. 1 of Denver, Colo.*, 69 F.3d 1523, 1532 (10th Cir. 1995) (quoting 42 U.S.C. § 1981. A prima facie case of discrimination under § 1981 requires facts that show: (1) the plaintiff is a member of a protected class; (2) the defendant had the intent to discriminate on the basis of race; and (3) the discrimination interfered with a protected activity as defined in § 1981. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th Cir. 2001).

The Complaint sufficiently alleges facts supporting the first element. Plaintiff alleges that he is African American, a member of a protected class. The second element is problematic. While plaintiff alleges that white walk-in patients were able to see a doctor more quickly than he was, he does not provide any factual allegations to show he knew those patients were walk-ins rather than patients with pre-arranged appointments. He also does not indicate any knowledge of the conditions of each of those persons such that he would know whether or not their physical conditions were more or less emergent than, or the same as, his. His factual allegations are thus lacking necessary information to establish that the comparators were similarly situated in all respects such as to support an inference that plaintiff's longer wait for a doctor was based on intentional discrimination based on his race.

Even assuming that plaintiff's allegations were sufficient to plausibly satisfy the second element, he has not satisfied the third element, because plaintiff has not alleged facts supporting a plausible claim that any alleged intentional discrimination interfered with a contract. To satisfy

5

the third element, the Tenth Circuit requires that plaintiff allege "actual loss of a contract interest." *See Hampton*, 247 F.3d at 1101, n.1; *see also Lymon v. Aramark Corp.*, 728 F. Supp. 2d 1222, 1247 (D.N.M. 2010). Most litigation of claims under § 1981 has been in the employment context, although the statute has also been applied in the retail and restaurant industries. *Hampton*, 247 F.3d at 1102. By his own allegations, plaintiff actually was provided health care without an appointment of any kind. Although he alleges that he should have been seen by a doctor sooner, his allegations do not support any plausible claim that he suffered any "actual loss of a contract interest" as a result of intentional race discrimination. In fact, the attachments to his Complaint show that the defendant continued to permit him to set appointments and receive service, although he ultimately failed to show up on time or at all to some of those appointments. (Doc. 1 at 19-22).

The allegations in this case are similar to those that the plaintiff made in a prior case against a restaurant, where he alleged that he and his wife watched and observed white patrons arrive at a restaurant after them receive faster or better service. *See Avington v. Andales Rest. Corp.*, No. 10-CV-640-CVE, 2011 WL 256879 (N.D. Okla. Jan. 25, 2011). As in that case, plaintiff has not stated any claim under § 1981 here. Having to wait for service at a walk-in medical clinic is not a statutory violation under the facts alleged by the plaintiff, where the facts do not establish a racial animus to deny him service, he actually did receive care that day at a time consistent with the time the defendant's employees had suggested he come back to see a doctor, and he did not bring his suit until after he had utilized the defendant's clinic for well over another year. Moreover, plaintiff's Complaint is a jumble of irrelevant allegations of employment discrimination and discrimination based on age. (*See* Doc. 1 at 6-13, ¶¶ 24-57 (First-Third Causes of Action)).

Plaintiff's Complaint also fails to state any plausible claim for intentional infliction of emotional distress (IIED) under Oklahoma law. That claim is governed by the narrow standards

6

set forth in the Restatement Second of Torts, § 46. *Gaylord Entm't Co. v. Thompson,* 958 P.2d 128, 149 (Okla. 1998). In *Breeden v. League Servs. Corp.,* 575 P.2d 1374 (Okla. 1978), the Oklahoma Supreme Court explained:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

*Id.* at 1376 (quoting Restatement (Second) § 46, cmt. d).

To state a claim, the plaintiff must assert facts that plausibly allege that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *See Schovanec v. Archdiocese of Okla. City,* 188 P.3d 158, 175 (Okla. 2008) (quoting *Comput. Publ'ns, Inc. v. Welton,* 49 P.3d 732, 735 (Okla. 2002)). The trial court must assume a "gatekeeper role" and make an initial determination that the alleged conduct "may be reasonably regarded as sufficiently extreme and outrageous" to maintain a claim for IIED. *Estate of Trentadue v. United States,* 397 F.3d 840, 856 n.7 (10th Cir. 2005); *see also Gaylord*, 958 P.2d at 149.

The Complaint does not set forth any facts that would rise to the level of outrageousness required to set forth an emotional distress claim under Oklahoma law, because the conduct alleged is not "so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *See Breeden*, 575 P.2d at 1376. In essence, plaintiff did not have an appointment at a clinic, he requested to be seen as a walk-in, and he was asked to wait until a doctor could see him. He became impatient and began accusing defendant's employees of wrongdoing, went to the administrative offices and filed a written

complaint, was asked to come back in the afternoon when he would have a better chance of being seen by a doctor, but he refused and sat there until the afternoon, when he was ultimately seen at the time defendant's employees had suggested he would have a chance to see a doctor. That does not state any claim for outrageous or egregious conduct by the defendant or its employees.

**IV.  Conclusion**

For the foregoing reasons, the plaintiff's claims are dismissed for failure to state a claim. The dismissal is appropriate under 28 U.S.C. § 1915(e)(2)(B)(ii), as plaintiff filed seeking in forma pauperis status. The dismissal is with prejudice because it appears from plaintiff's Complaint that he simply cobbled together portions of his prior complaints of employment and age discrimination, which have nothing to do with the facts he alleges against the defendant here, and it is apparent that he cannot cure the deficiencies of the Complaint given that the defendant was not his employer. In addition, he cannot cure any attempted claim under § 1981 because his factual allegations belie any claim of intentional discrimination.

Plaintiff's claims are **dismissed with prejudice**. Plaintiff's Motion for Leave to Proceed In Forma Pauperis (Doc. 2) is **moot**.

SO ORDERED this 31st day of May, 2017.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE